IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**MICHAEL WAYNE PARCELL**
**AND STEPHANIE MICHELLE**
**AKERS,**

    Plaintiffs, on behalf of
    themselves and all others
    similarly situated,

v.                                                                           Case No. 7:20-cv-489

**VOLVO GROUP**
**NORTH AMERICA, LLC,**

                                                                          **JURY TRIAL DEMAND**
    **Defendant.**

**FIRST AMENDED CLASS ACTION COMPLAINT**

The above-named Plaintiffs, Michael Wayne Parcell (hereinafter, "Mr. Parcell" or "Plaintiff") and Stephanie Michelle Akers, both by counsel, on behalf of themselves and all others similarly situated, brings this class action against Defendant Volvo Group North America, LLC (hereinafter, "Volvo" or "Defendant"), and allege the following:

**NATURE OF THE ACTION**

1. Plaintiffs brings this action to restrain and enjoin Defendant from engaging in an unlawful pattern and practice of:

- categorizing employee leave, taken pursuant to the Family and Medical Leave Act, as amended, codified at 29 U.S.C. §§ 2601 *et seq*. (hereinafter, "FMLA"), as non-protected and unexcused "personal business" absences;

- discouraging employees from, and punishing employees for, requesting and taking FMLA leave;

- administering unwarranted disciplinary actions against employees seeking FMLA leave and denying these employees professional advancement opportunities; and

1

- discriminating and retaliating against employees for exercising the substantive FMLA rights to which they are entitled, thus interfering with employee use of FMLA leave,

and to recover damages caused by Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter as it arises from the federal questions presented by the FMLA. *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

3. Venue is appropriate, as the acts and/or omissions of Defendant from which the causes of action arise occurred within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

4. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

## THE PARTIES

5. Plaintiff Mr. Parcell has worked for Volvo for nearly 15 years as an Assembler, and resides in Pearisburg, Virginia.

6. Plaintiff Stephanie Michelle Akers was initially hired by Volvo in January of 2012 as a Production Employee and was ultimately wrongfully terminated on September 9, 2019.

7. Volvo is incorporated and does business within the Commonwealth of Virginia and maintains an automobile manufacturing plant located at 4881 Cougar Trail Road, Dublin, VA 24084 (the "Plant").

8. Volvo is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, and

therefore is an "employer" within the meaning of 29 U.S.C. § 2611(4).

9. Mr. Parcell and Ms. Akers, at all times relevant to the Complaint, were each an "eligible employee" of Defendant. Mr. Parcell had a family member with a "serious health condition", while Ms. Akers herself experienced a "serious health condition" as those terms are defined in 29 U.S.C. § 2611(2) and 29 U.S.C. § 2611(11).

## FACTS

**A. Plaintiff Parcell**

10. Mr. Parcell was hired by Volvo on or about August 5, 2005, as an Assembler in Volvo's Dublin, Virginia manufacturing plant.

11. Mr. Parcell earns approximately $22 per hour, with benefits, and works approximately 60 hours per week.

12. During his employment with Volvo, Mr. Parcell has consistently performed his work at a satisfactory level and met or exceeded Volvo's legitimate business expectations of him.

13. However, Volvo has interfered with Mr. Parcell's entitlement to, and exercise of, his federally protected rights under the FMLA by unlawfully discriminating and retaliating against him by categorizing his FMLA leave as unexcused absences, demoting him, and refusing to consider him for available promotions and related career advancement opportunities.

14. Specifically, Mr. Parcell's wife, Melissa Parcell, suffers from several serious health conditions, including degenerative disc disease, anxiety, arthritis, depression, headaches, hypercholesterolemia, chronic hypertension, osteoarthritis, panic disorder, hyperlipidemia, coronary artery disease, chronic fatigue, and spinal stenosis.

15. Ms. Parcell's medical conditions, which impair several of her daily life activities,

require continuing treatment by a health care provider and frequent in-office physician visits, and qualify as "serious health conditions" within the meaning of the FMLA. See 29 U.S.C. § 2611(11).

16. In or about 2017, Mr. Parcell informed his immediate supervisors of his wife's medical issues.

17. Accordingly, at all times relevant, Volvo had notice of Mr. Parcell's wife's serious health conditions and, in or about 2017, Mr. Parcell requested, and was approved for, intermittent FMLA leave to care for his wife.

18. Mr. Parcell was re-approved for intermittent FMLA leave in 2018.

19. However, upon information and belief, Mr. Parcell's supervisors hold a discriminatory animus against accommodating Mr. Parcell and have been resistant to his use of FMLA leave.

20. As a result, Mr. Parcell's Volvo supervisors have targeted Mr. Parcell, discriminated, and retaliated against him, and treated him unfavorably for exercising the substantive FMLA rights to which he is entitled, thus interfering with Mr. Parcell's use of FMLA leave.

21. Upon information and belief, Volvo has responded similarly to other employees' requests related to FMLA leave and has engaged in an unlawful and discriminatory pattern and practice of discouraging FMLA leave and retaliating against employees who rely on the FMLA's protections.

22. Upon information and belief, in or about January of 2019, Plant Supervisor Franky Marchand directed other Volvo supervisory employees, including, but not limited to, Production Supervisor Eric Holiday, to categorize employee FMLA leave, including Mr. Parcell's FMLA leave, as "personal business" leave.

23. Such categorization renders FMLA leave as unexcused "chargeable" hours and leads to unwarranted employee discipline for alleged attendance infractions.

24. Such disciplinary issues can result in ineligibility for promotion and termination from employment.

25. Mr. Marchand's plant-wide directive concerning FMLA leave is contrary to both the FMLA and to Volvo's written attendance policy, which states that "[h]ours of absences for the specified reasons listed below are not chargeable hours in the employee's attendance record [including] . . . Approved FMLA." This directive both deters the use of FMLA leave by all those employees for whom it would be eligible and punishes all those who exercise their right to such leave.

26. Accordingly, Volvo's decision to unlawfully categorize FMLA leave as non-protected "personal business" absences has resulted in unwarranted disciplinary actions against Mr. Parcell, and others similarly situated.

27. As an example, on or about January 5, 2019, Mr. Parcell was unfairly chastised for inquiring about his FMLA leave, and in or about February of 2019, Shift Supervisor Justin Arnold presented Mr. Parcell with a written warning concerning Mr. Parcell's attendance and use of FMLA leave.

28. Additionally, citing Mr. Parcell's FMLA leave, Volvo demoted Mr. Parcell and refused to meaningfully consider him for several additional employment advancement opportunities between 2017 and 2019.

29. Mr. Parcell was well qualified for each of these employment opportunities and, upon information and belief, Volvo's decisions concerning Mr. Parcell's professional advancement were directly related to Volvo's concerted effort to discriminate and retaliate against Mr. Parcell for engaging in the protected activity of requesting and taking

5

FMLA leave.

30. Moreover, Mr. Parcell fears that these improperly documented "personal business" absences, which have resulted in a significant number of attendance points and related disciplinary actions against him, will ultimately bring about his termination from employment.

31. Mr. Parcell has, as a result, stopped using his FMLA leave to take his wife to physician appointments, which has caused a gap in her medical care, as she is unable to attend these appointments unassisted.

32. Accordingly, Volvo has interfered with, restrained, and/or denied Mr. Parcell's the ability to exercise his rights under the FMLA, and retaliated against him for exercising the substantive FMLA rights to which he is entitled.

33. Upon information and belief, no business-related legitimate reason justified the actions Volvo took against Mr. Parcell, and Volvo would not have taken these discriminatory and retaliatory actions against him but for his use of FMLA leave to care for his spouse.

34. As a direct and proximate result of Volvo's FMLA violations, Mr. Parcell and, upon information and belief, other Volvo employees, have lost compensation, benefits, and professional advancement opportunities, and sustained other monetary losses, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

35. At all times material hereto, Volvo engaged in unlawful or discriminatory practice or practices with bad faith, malice, or reckless disregard to the federally protected rights of Mr. Parcell, and, upon information and belief, other Volvo employees.

36. The above-described acts by Volvo and employees of Volvo constitute an unlawful

discrimination and/or retaliation and/or interference in violation of the FMLA.

**B. Plaintiff Akers**

37. Ms. Akers was hired by Volvo on or about January 1, 2012, as a Production Employee in Volvo's Dublin, Virginia manufacturing plant.

38. Ms. Akers initially earned approximately $15.47 per hour, with benefits, and worked approximately more than forty hours per week. At the time of her termination, Ms. Akers earned $20.27 per hour.

39. During her employment with Volvo, Ms. Akers consistently performed her work at a satisfactory level and met or exceeded Volvo's legitimate business expectations of her.

40. However, Volvo interfered with Ms. Akers's entitlement to, and exercise of, her federally protected rights under the FMLA by unlawfully discriminating and retaliating against her by categorizing her FMLA leave as unexcused absences and terminating her *twice* in retaliation for her FMLA usage.

41. Specifically, Ms. Akers suffers from a gastro-intestinal ailment that includes symptoms of debilitating nausea, sharp abdominal pain, light headedness, and the frequent emergent need to use the restroom without warning.

42. Ms. Akers' medical condition, which impair several of her daily life activities, require continuing treatment by a health care provider and frequent in-office physician visits, and qualifies as a "serious health condition" within the meaning of the FMLA. See 29 U.S.C. § 2611(11).

43. Pursuant to the FMLA paperwork she submitted to Volvo, Ms. Akers' serious health condition commenced on May 9, 2019.

44. Ms. Akers requested intermittent leave as needed, ten hours per day, one to two days per week, from May 10, 2019 through November 10, 2019.

7

45. Ms. Akers took all proper and necessary steps to request FMLA leave at Volvo.

46. Volvo initially certified and granted Ms. Akers' intermittent FMLA leave.

47. Once granted, Ms. Akers used all proper procedures at Volvo to inform her employer of her need for FMLA leave. Despite this, Ms. Akers noticed that like Mr. Parcell, Volvo charged time against her attendance balance for the days and hours in which she utilized FMLA leave.

48. Volvo unlawfully categorized Ms. Akers' FMLA usage as "personal business", just like Volvo had done to Mr. Parcell.

49. On or about August 22, 2019, a Volvo employee informed Ms. Akers that she was terminated from employment due to an alleged error on her FMLA paperwork. Ms. Akers thought this was highly unusual because her leave had been approved by Volvo on or about May 28, 2019. She wondered why Volvo terminated Ms. Akers for an alleged error on paperwork that Volvo had granted three months prior?

50. Volvo Human Resources representative Kim Gillespie informed Ms. Akers that Ms. Akers' health care provider had "checked the wrong box" but she could return to work if she fixed this alleged error.

51. Ms. Akers contacted her health care provider and received additional FMLA leave requests. She then tendered these to Volvo.

52. Human Resources representative Dave Dunford then directed Ms. Akers to sign a "Last Chance Letter", implying that for some unknown reason, Ms. Akers' employment at Volvo was on thin ice, despite no lapses in her performance or any violations of policy.

53. In order to be re-employed, Ms. Akers signed the document.

54. Volvo then rehired Ms. Akers before the end of August, 2019. However, instead of reinstating her to her original position, Volvo stripped Ms. Akers of her seniority and

directed Ms. Akers to work a much more physically demanding job on the assembly line. A new hire was placed in Ms. Akers' former position.

55. Despite the demands of this new position, Ms. Akers worked without fail or deviation from Volvo's legitimate business expectations.

56. On or about September 5, 2019, Ms. Akers began to feel lightheaded while at work.

57. Ms. Akers' supervisor, Tim Spencer directed Ms. Akers to see the company nurse.

58. Mr. Spencer then questioned the veracity of Ms. Akers' medical condition and asked if her current ailment was merely her lashing out at Volvo due to being terminated in the prior month.

59. Ms. Akers professionally informed Mr. Spencer that she was upset for having been terminated, but her medical condition was legitimate.

60. Ms. Akers then took intermittent FMLA leave for the remainder of September 5, 2019.

61. On September 9, 2019, Ms. Akers was directed to meet with a representative from Human Resources.

62. This representative questioned the legitimacy of Ms. Akers' prior FMLA leave and requested a note from Ms. Akers' health care provider.

63. Ms. Akers informed the Human Resources representative that she did indeed have a note from her health care provider.

64. This Human Resources representative then adopted a very rude and unprofessional tone toward Ms. Akers as she doubted the veracity of Ms. Akers' underlying health condition.

65. On the following day, September 10, 2019, the Human Resources representative terminated Ms. Akers' employment.

66. Ms. Akers' supervisors held a discriminatory animus against accommodating Ms. Akers and were resistant to her use of FMLA leave.

67. As a result, Ms. Akers' supervisors targeted Ms. Akers, discriminated, and retaliated against her, and treated her unfavorably for exercising the substantive FMLA rights to which she is entitled, thus interfering with Ms. Akers' use of FMLA leave.

68. Upon information and belief, Volvo has responded similarly to other employees' requests related to FMLA leave and has engaged in an unlawful and discriminatory pattern and practice of discouraging FMLA leave and retaliating against employees who rely on the FMLA's protections.

69. No business-related legitimate reason justified the actions Volvo took against Ms. Akers, and Volvo would not have taken these discriminatory and retaliatory actions against her but for her use of FMLA leave.

70. As a direct and proximate result of Volvo's FMLA violations, Ms. Akers and, upon information and belief, other Volvo employees, have lost compensation, benefits, and professional advancement opportunities, and sustained other monetary losses, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

71. At all times material hereto, Volvo engaged in unlawful or discriminatory practice or practices with bad faith, malice, or reckless disregard to the federally protected rights of Ms. Akers, and, upon information and belief, other Volvo employees.

72. The above-described acts by Volvo and employees of Volvo constitute an unlawful discrimination and/or retaliation and/or interference in violation of the FMLA.

## CLASS ALLEGATIONS

73. The Plaintiffs and Rule 23 Class Representatives, Mr. Parcell and Ms. Akers, seek to maintain claims pursuant to the FMLA, individually and on their own behalf, and on behalf of a class of current and former Volvo employees at the Plant, pursuant to Federal Rule of Civil Procedure 23.

74. The Plaintiffs seeks to represent classes consisting of all current and former employees of Volvo at the Plant, who, at any time from three years preceding the Complaint's filing to the resolution of this action,

1) Have been exposed to interference in the exercise of their FMLA rights to take FMLA leave by virtue of Volvo's decision to categorize as non-protected and unexcused "personal business" absences.

2) Due to Volvo's decision to categorize as non-protected and unexcused "personal business" absences have been exposed to retaliation/discrimination based upon their requests for, and use of, federally protected FMLA leave.

75. The Plaintiffs seeks equitable relief, compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, costs, and attorneys' fees, and injunctive and declaratory relief on behalf of themselves and the putative classes.

76. Class treatment is appropriate because the classes are so numerous that joinder of all members is impracticable. The exact number within the classes is unknown, but it may be determined from records maintained by Volvo.

77. Class treatment is appropriate because there are questions of law or fact common to the classes, including the following:

    a. whether Volvo engaged in a pattern and practice of discrimination/retaliation against class members on the basis of their requests and/or exercise of FMLA leave, or interfered with class members' use of FMLA leave;

    b. whether Volvo engaged in a pattern and practice of interfering in the exercise of FMLA rights of class members by categorizing FMLA leave as non-protected and unexcused "personal business" absences;

    c. whether Volvo's conduct common to the classes violated the FMLA; and

    d. whether equitable remedies, damages, and injunctive and declaratory relief for the classes are warranted.

78. Class treatment is appropriate for each class sought because the claims of the Class Representatives are typical to those of the class members, as a whole, in that their claims are based on the same discriminatory practices, the common questions of law and fact are being advanced against the same defendant, and Volvo will raise common defenses to the claims. The relief sought by the Class Representatives is also typical of the relief which is sought on behalf of the proposed classes.

79. Class treatment is appropriate for each class sought because the Plaintiffs have retained counsel who are competent, experienced in litigating class actions, and will fairly and effectively represent the interests of the class. The Plaintiffs and counsel do not foresee any substantial difficulties in managing a class action.

80. Class treatment is appropriate for each class sought under Rule 23(b)(1) of the Federal Rules because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Volvo and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the

individual adjudications or would substantially impair or impede their ability to protect their interests.

81. Class treatment is appropriate for each class sought under Federal Rule of Civil Procedure 23(b)(2) because Volvo has acted or refused to act on grounds that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the classes as a whole.

82. Class treatment is appropriate for each class sought under Federal Rule of Civil Procedure 23(b)(3) because:

   a. common questions of law and fact, including those listed above, predominate over any questions affecting only individual members;

   b. class actions are superior to other available methods for the fair and efficient adjudication of this controversy because other methods would involve the filing of hundreds of individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same;

   c. a disposition on the merits of one individual class member would have collateral estoppel effect on all individual class members if the class members were required to prosecute their cases individually; and

   d. the putative class members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized discriminatory practices and their recovery in either an individual or class action will be based on the amount of compensation that each member has been denied by Defendant, either through discriminatory payment, conduct, or termination.

83. Class treatment is appropriate for each class sought under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

84. The Class Representatives and counsel are not aware of any other litigation concerning the controversy(s) that has already begun by proposed class members.

85. It is desirable to concentrate the claims in this forum because the employment practices complained of herein occurred extensively in this forum.

## CAUSES OF ACTION

### COUNT I: DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FMLA
**(Named Plaintiffs and Putative Class Members)**

86. Plaintiffs and putative class members incorporate by reference herein the preceding paragraphs of this Complaint.

87. Defendant has discriminated and retaliated against Plaintiffs and putative class members by unlawfully categorizing employee FMLA leave as non-protected and unexcused "personal business" absences by administering unwarranted disciplinary actions against them, denying them professional advancement opportunities, improperly denying them federally protected FMLA rights, retaliating against them for exercising the substantive FMLA rights to which they were entitled, and treating them differently, and less favorably, than similarly situated employees not exercising FMLA rights.

88. Defendant would not have taken these discriminatory and retaliatory actions against Plaintiffs and putative class members, but for their engaging in protected activity under the FMLA.

89. Defendant's discriminatory and retaliatory conduct prejudiced Plaintiffs and putative class members in that they lost compensation and benefits, were disciplined, and denied employment advancement opportunities, and sustained other monetary losses as a direct result of Defendant's violation.

90. As a direct and proximate result of Defendant's actions, Plaintiffs and putative class members have suffered and will continue to suffer pecuniary loss, emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

91. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with bad faith, malice, or reckless disregard to the federally protected rights of Plaintiff and putative class members so as to support an award of liquidated damages.

92. The above-described acts by Defendant and employees of Defendant constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

## COUNT II: INTERFERENCE IN VIOLATION OF THE FMLA
**(Named Plaintiff and Putative Class Members)**

93. Plaintiffs and putative class members incorporate by reference herein the preceding paragraphs of this Complaint.

94. Defendant interfered with Plaintiffs' and putative class members' use of FMLA leave by unlawfully categorizing employee FMLA leave as non-protected and unexcused "personal business" absences, discouraging Plaintiffs and putative class members from requesting and taking FMLA leave under fear of unwarranted disciplinary actions against them, denial of professional advancement opportunities, denial of federally protected FMLA rights, different and less favorable treatment, than similarly situated employees not exercising FMLA rights, and discrimination and retaliation against them for attempting to exercise (or actually exercising) the substantive FMLA rights to which they were entitled, thus impeding Plaintiffs and putative class members' exercise of their rights under the FMLA.

95. Defendant's interference prejudiced Plaintiffs and putative class members in that they lost compensation and benefits, were disciplined, and denied employment advancement opportunities, and sustained other monetary losses as a direct result of Defendant's violation.

96. As a direct and proximate result of Defendant's actions, Plaintiffs and putative class members have suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

97. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with bad faith, malice, or reckless disregard to the federally protected rights of Plaintiffs and putative class members so as to support an award of liquidated damages.

98. The above-described acts by Defendant and employees of Defendant constitute unlawful interference with Plaintiffs' and putative class members' rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq.* ("FMLA").

WHEREFORE, Plaintiffs, on behalf of themselves and all putative class members, pray for relief as follows:

    a. Certification of the case as a class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

    b. Designation of Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as Class Counsel;

    c. An order expunging all discipline and unwarranted termination related to the use of FMLA from each Plaintiffs' and putative class members' work records, and reinstating those for whom such discipline resulted in demotion or termination;

    d. An order enjoining Defendant from discriminating and retaliating against employees for exercising the substantive FMLA rights to which they are entitled, or otherwise interfering with employee use of FMLA leave;

    e. An order enjoining Defendant from categorizing employee FMLA leave as non-protected and/or unexcused "personal business" absences; and

    f. Judgement against Defendant and equitable relief, compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, and liquidated damages, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the ____ day of December, 2020, I filed the forgoing pleading on the Court's CM/ECF system which caused a Notice of Electronic Filing to be transmitted to the following:

Crystal L. Tyler, Esq.
Jackson Lewis, P.C.
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219
P.O. Box 85068
Richmond, Virginia 23285
Tel: 804-649-0404
crystal.tyler@jacksonlewis.com

*Counsel for Defendant*

                                           /s/ Thomas E. Strelka